UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL PHELPS,

    Plaintiff,

v.                                      Case No. 2:21-cv-121-JLB-MRM

LEE COUNTY, FLORIDA

    Defendant.
_____/

## ORDER

Michael Phelps ("Mr. Phelps"), a person who is a legally blind in both eyes, applied to work as a librarian at the Pine Island Public Library in Lee County, Florida. (Doc. 18 at 4, ¶¶ 11, 16.) The Library's job application required Mr. Phelps to indicate whether he possessed a valid driver's license and whether he was disabled. (Id. at 5, ¶¶ 21–22.) Mr. Phelps noted on the application that he does not possess a valid driver's license and that he has a disability. (Id. ¶¶ 23–24.) Mr. Phelps was ultimately not hired by Lee County. (Id. at 4, ¶ 1.) Mr. Phelps initiated this lawsuit against Lee County, alleging violations of: (1) the scope of pre-employment inquires under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(d)(2)(A); (2) disparate impact under Title I of the ADA; and (3) disparate impact under the Florida Civil Rights Act ("FCRA").

In its second motion to dismiss, Defendant moves to dismiss Mr. Phelps's First Amended Complaint, alleging, for the first time, that Mr. Phelps's claims are barred because he has failed to exhaust his administrative remedies with the Equal

Employment Opportunity Commission ("EEOC").  (Doc. 31 at 1).  Defendant also moves to dismiss for failure to state a plausible claim for a violation of 42 U.S.C. § 12112(d)(2)(A), or for disparate impact under the ADA or the FCRA.  (Id. at 1–2.)

After careful review of the parties' arguments and accepting all facts alleged in the First Amended Complaint as true, the Court disagrees with Defendants on all accounts.  First, Defendant is barred from raising the exhaustion of remedies defense in its second motion to dismiss because it failed to do so in its first motion to dismiss and thereby forfeited that defense.  Second, Mr. Phelps has sufficiently stated a plausible claim for a violation of section 12112(d)(2)(A) because he has alleged that he was not hired because of his response to an impermissible pre-employment inquiry.  Third, Mr. Phelps has adequately alleged claims for disparate impact under the ADA and FCRA because he has alleged that Defendant's job application had a greater negative impact on people with a certain disability than it did on people without that disability.  The Court therefore concludes that Defendant's second motion to dismiss (Doc. 31) is **DENIED**, and the case shall proceed with discovery in the normal course.

## I. Background Facts

Mr. Phelps suffers from "acute bilateral atrophy," which has caused him to be visually impaired since birth.  (Doc. 18 at 4, ¶¶ 11–13.)  At all times relevant to his complaint, Mr. Phelps was legally blind in both eyes.  (Id. ¶ 11.)  He was valedictorian of his high school class, graduated cum laude with an associate degree in Business Administration, and is currently pursuing a bachelor's degree in

Business Administration. (Doc. 37-3 at 4–5.) Between 2013 and 2019, Mr. Phelps worked at a public library in Cabell County, West Virginia, where, with reasonable accommodations, he was able to perform his job at a "satisfactory level." (Doc. 18 at 4, ¶¶ 14–15.) He left this job with references from his supervisor and the library's branch manager. (Doc. 37-3 at 5.)

In 2019 and 2020, Mr. Phelps applied for a job as a Library Associate at the Pine Island Public Library in Lee County, Florida. (Doc. 18 at 4, ¶ 16.) Among other things, the Library's job applications required Mr. Phelps to state whether he "possess[ed] a valid driver's license with an acceptable driving record" (Doc. 37-1 at 4, ¶ 9) and whether he is "Handicapped/Disabled," (Doc. 37-3 at 6, ¶ 15). On each of his applications, Mr. Phelps indicated that he did not hold a valid driver's license and that he was disabled. (Doc. 18 at 5, ¶ 24.) Mr. Phelps was not hired for a job at the Library. (Id. at 1–2, ¶ 1.)

On September 18, 2020, Mr. Phelps filed a Charge of Discrimination with the Florida Commission on Human Relations and the EEOC, alleging discrimination on the basis of his disability. (Doc. 18 at 5–6, ¶ 26.) On November 6, 2020, Defendant submitted a Position Statement to the EEOC responding to Mr. Phelps's Charge of Discrimination. (Doc. 37-5 at 2–3.) In the statement, Defendant explained that the Library Associate position required a driver's license and the ability to drive as a condition of employment because the position required "that the employee make bank deposit runs on a regular basis and attend multiple off-site meetings, which requires driving to locations beyond the branch library." (Doc. 37-5 at 3.) At the

3

close of its investigation, on January 21, 2021, the EEOC issued Mr. Phelps a "Right to Sue" letter, granting Mr. Phelps permission to file suit in federal or state court. (Doc. 18 at 6, ¶ 27).

## II. Discussion

Mr. Phelps contends that Defendant failed to hire him because of his disability. As a result, Mr. Phelps asserts two ADA claims. First, he asserts that the Library asked impermissible pre-employment screening questions. See 42 U.S.C. § 12112(d)(2)(A). Next, he alleges disparate impact under both Title I of the ADA and the FCRA. In its second motion to dismiss, Defendant argues that Mr. Phelps failed to exhaust his administrative remedies, failed to state a plausible claim for a violation of the ADA's prohibition on pre-employment screening, and failed to state a plausible claim for disparate impact under the ADA or the FCRA. The Court will address the parties' arguments in turn.

### A. Exhaustion of Administrative Remedies

Defendant argues that Mr. Phelps's claims are barred because he failed to exhaust his administrative remedies with the EEOC. (Doc. 31 at 1.) Specifically, Defendant contends that Mr. Phelps: (1) failed to verify his charge of discrimination (id. at 6); (2) failed to include disparate impact allegations in the charge of discrimination (id. at 7); and (3) filed time-barred claims (id. at 11). Mr. Phelps responds that Defendant has waived the right to raise these defenses by not doing so in its first motion to dismiss. The Court agrees with Mr. Phelps. The Federal Rules of Civil Procedure bar parties from raising a defense in a successive motion to

dismiss that was available, but omitted, from an earlier motion. Accordingly, the Court rejects Defendant's exhaustion of administrative remedies defense as to Mr. Phelps's ADA and FCRA claims.

The Eleventh Circuit has spoken clearly that exhaustion defense should be raised in a motion to dismiss under Rule 12(b). See Bryant v. Rich, 530 F.3d 1368, 1374–75 (11th Cir. 2008). Though "motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)," this is "not unusual or problematic," and the "normal pleading rules" apply. Brooks v. Warden, 706 F. App'x 965, 968 (11th Cir. 2017) (explaining that, as an unenumerated Rule 12(b) motion, the exhaustion defense "is subject to the rules and practices applicable to the most analogous Rule 12(b) motion" (quotation omitted)).

One of the pleadings rules to which the exhaustion defense is subject is Rule 12(g)(2), which limits the defenses that can be raised for the first time in a successive motion to dismiss under Rule 12. Rule 12(g)(2) states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). That is, without application of one of the two exceptions, a party is prohibited from raising a defense in a second Rule 12 motion that it failed to raise in its first Rule 12 motion. Brooks v. Warden, 706 F. App'x 965, 968 (11th Cir. 2017); see also Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1106 (9th Cir. 2000) ("A fundamental tenet of the Federal Rules of Civil Procedure is that

5

certain defenses under Fed. R. Civ. P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived.").

Neither of the two exceptions to Rule 12(g)(2) applies to the defense of exhaustion of available remedies. Rule 12(h)(2) exempts motions to dismiss for "[f]ailure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(h)(2). But an exhaustion defense is not a failure-to-state-a-claim defense because it is independent from the merits of the plaintiff's claim. See Bryant, 530 F.3d at 1376 n.12 (explaining, in the context of the Prison Litigation Reform Act, that where "exhaustion is not adjudicated as part of the merits, it is unlike a defense under Rule 12(b)(6) for failure to state a claim."). The exhaustion defense therefore does not fall within the Rule 12(h)(2) exception to Rule 12(g)(2).

Rule 12(h)(3) exempts motions to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). The Supreme Court, however, has held that the "exhaustion requirement is not jurisdictional." Woodford v. Ngo, 548 U.S. 81, 101 (2006). Rather, it is a claim-processing rule. See Santiago-Lugo v. Warden, 785 F.3d 467, 472 (11th Cir. 2015) ("Examples of non-jurisdictional rules . . . include 'claim-processing rules,' such as exhaustion requirements, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." (quoting Henderson v. Shinseki, 562 U.S. 428, 435 (2011)). Because the exhaustion requirement is non-jurisdictional, the Rule 12(h)(3) exemption does not apply either.

Here, Rule 12(g)(2) bars Defendant from raising the exhaustion defense in its second motion to dismiss for failure to state a claim. (Doc. 31). Defendant filed an earlier motion to dismiss under Rule 12, wherein it could have raised the exhaustion requirement as a defense. But it did not. Instead, in that earlier motion (Doc. 13), Defendant's only arguments for dismissal were that Mr. Phelps's Complaint was a shotgun pleading and that Mr. Phelps failed to state a claim under Rule 12(b)(6). Because Defendant did not raise the exhaustion defense in its first motion to dismiss under Rule 12, it "must not make another motion under this rule for raising [that] defense." Fed. R. Civ. P. 12(g)(2). Defendant has therefore forfeited its ability to raise the exhaustion defense in its second motion to dismiss, and Mr. Phelps's complaint cannot be dismissed on that ground.

### B. Failure to State a Claim

The Court now turns to Defendant's contentions that Mr. Phelps has failed to state a claim. "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003) (citation omitted).

To survive a motion to dismiss for failure to state a claim, a complaint does not have to contain "detailed factual allegations," but it must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Specifically, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. And these factual allegations must raise a right to relief that is more than speculative. Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008).

### i. Violation of 42 U.S.C. § 12112(d)(2)(A)

Defendant first argues that Mr. Phelps failed to state a claim for a violation of 42 U.S.C. § 12112(d)(2)(A), which governs certain pre-employment inquiries, because he failed to show that he suffered any damages. (Doc. 31 at 11–12.) Mr. Phelps responds that there is no requirement to show damages at the motion to dismiss stage of the proceedings. (Doc. 37 at 18–19.) Instead, he contends that "it is enough for Plaintiff to allege damages in his operative complaint." (Id.) For the reasons outlined below, the Court agrees with Mr. Phelps.

The ADA prohibits employers from discriminating against persons with disabilities. 42 U.S.C. § 12101. The statutory definition of "discrimination" includes several actions an employer might take to screen out a job applicant with

disabilities during the hiring process.  See generally 42 U.S.C. § 12112.  Section 12112(d)(2)(A) prohibits employers from making inquiries of a job applicant as to whether that applicant is disabled or the nature and severity of such disability.  An employer may, however, make "pre-employment inquiries into the ability of an applicant to perform job-related functions, and/or may ask an applicant to describe or to demonstrate how, with or without reasonable accommodation, the applicant will be able to perform the job-related functions."  29 C.F.R. § 1630.14(a); see also 56 Fed. Reg. 35725, 35732 (1991).  The guidance adopted by the EEOC under the ADA further clarify that "disability-related" questions are those "likely to elicit information about a disability."  EEOC, ADA Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations (EEOC Notice 915-002) (Oct. 10, 1995), available at http://www.eeoc.gov/laws/guidance/enforcement-guidance-preemployment-disability-related-questions-and-medical; see Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 677 (1st Cir. 1995) (recognizing the "likely to elicit" standard).

      Defendants argue that Mr. Phelps has failed to show that he suffered any injury or damages.  While the Eleventh Circuit has not addressed whether a plaintiff raising a claim under section 12112(d)(2)(A) must establish a cognizable injury in fact at the motion to dismiss stage, other circuits have.  For example, the Tenth Circuit has found that a plaintiff has sufficiently alleged that he suffered an injury in fact where he argues that an employer did not hire him because of his responses to impermissible questions, and he seeks damages to remedy his injury.

9

Griffin v. Steeltek, Inc., 160 F.3d 591, 595 (10th Cir. 1998). And the Fifth Circuit has held that an adverse employment decision caused by violation of Section 12112(d)(2)(A) can constitute a compensable injury in fact. Armstrong v. Turner Indus., Inc., 141 F.3d 554, 560–61 (5th Cir. 1998).

Here, Mr. Phelps alleges that he was not hired because of his responses to allegedly unlawful questions, and in so doing, he has alleged an injury in fact. In his first amended complaint, Mr. Phelps alleged that Defendant "asked him prohibited questions during the hiring process, including but not limited to whether he was disabled." (Doc. 18 at 7, ¶ 37.) Mr. Phelps further alleged that "Lee County refused to hire [him] as a librarian, despite his qualifications for the job" and that "the County's refusal to hire him discriminates against him based on his disability." (Id. at 1, ¶ 1.) Mr. Phelps's suggestion that he was not hired because of his responses to an allegedly unlawful pre-employment inquiry is sufficient to allege that he has suffered an injury or damages as a result of the inquiry. At the motion to dismiss stage, this alone is sufficient to plausibly state a claim of relief. See Fed. R. Civ. P. 8(a)(2) (requiring only that a plaintiff provide "a short and plain statement of the claim showing that [he] is entitled to relief").

### ii. Disparate Impact Claims

Defendant further argues that Mr. Phelps has failed to state a claim based on disparate impact under both the ADA and the FCRA because he has not "allege[d] facts to show that [Defendant's] policy resulted in illegal discrimination." (Doc. 31 at 14.) Specifically, Defendant contends that Mr. Phelps is required to provide

10

statistical evidence showing that the challenged practice has resulted in prohibited discrimination in order to establish a prima facie disparate impact claim under the ADA and the FCRA. (Id. at 13–14; Doc. 37 at 21.) Both parties agree that Mr. Phelps has offered no such evidence at this juncture. Mr. Phelps correctly notes, however, that such evidence is not required to survive a motion to dismiss at the pleading stage. (Doc. 37 at 21 (citing Forsyth v. Univ. of Ala. Bd. of Trs., No. 7:17-cv-854-RDP, 2018 WL 4517592, at *6 (N.D. Ala. Sept. 20, 2018)). Pending before the Court is a motion to dismiss, not a motion for summary judgment. Requiring evidence of disparate impact before discovery has commenced would effectively preclude any plaintiff without access to the records of his would-be employer from having his day in court. Such a requirement would do little more than reward the enormous information asymmetry between employer and applicant, stacking the decks against potential plaintiffs.

"Disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (quotation omitted). Disparate impact claims are cognizable under both the ADA and the FCRA and can be analyzed jointly. See 42 U.S.C. § 12112(b); FLA. STAT. § 760.10(1)(b) (2021); see also Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007); Myers v. Winn-Dixie Stores, Inc., 8:10–CV–1987–T–17TGW, 2012 WL 529522 at *12 (M.D. Fla. Feb. 10, 2012).

11

For a plaintiff to prevail on a disparate impact claim, he must show that "a facially neutral employment practice had a significant discriminatory effect on a single group of people." Smith v. Miami-Dade Cnty., 621 F. App'x 955, 961 (11th Cir. 2015) (citing Stephen v. PGA Sheraton Resort, Ltd., 873 F.2d 276, 278–79 (11th Cir. 1989)). This includes providing "comparative evidence showing that a policy has a disparate impact on the disabled." Id.

While the Eleventh Circuit has not directly addressed whether a plaintiff must present statistical evidence at the pleadings stage to establish disparate impact discrimination under the ADA, it has recently remarked, "when assessing disparate impact claims related to disability, it may not be necessary to provide statistical data." Forsyth, No. 20-12513, 2021 WL 4075728, at *6 (citation omitted). Further, a number of district courts within the Eleventh Circuit have held that such evidence is not required to survive a motion to dismiss. See, e.g., Forsyth, No. 7:17-cv-854-RDP, 2018 WL 4517592, at *6) (explaining that "statistical evidence showing the discriminatory result of the challenged employment practice would be necessary to prevail on a disparate impact claim . . . [h]owever, again, this is not the appropriate standard to measure Plaintiff's claims at the pleading stage"); see also Pritchard v. Fla. High Sch. Athletic Ass'n. Inc., No. 2:19-cv-94-FtM-29MRM, 2019 WL 1993511, at *5 (M.D. Fla. May 6, 2019) (explaining, "[S]tatistical evidence is necessary to prevail on a disparate impact claim, it is not required to survive a motion to dismiss at the pleading stage"); see also Hall v. Dolgencorp, LLC, 2020 WL 7388649, at *5 (N.D. Ala. Dec. 16, 2020) ("It is unreasonable and contrary to

pleading standards to expect [plaintiff] to be able to allege statistical data in her complaint concerning the impact of [her employer's] policy on pregnant women. It is sufficient that [plaintiff] alleged that a facially neutral policy has a disproportionate impact on a protected class . . . ."). Instead, these courts have held that plaintiffs should be allowed the opportunity of discovery before being required to present statistics on discrimination. Id. "To hold otherwise would, in the vast majority of cases, shut the courthouse door on a plaintiff alleging a claim based on disparate impact." Forsyth, No. 7:17-cv-854-RDP, 2018 WL 4517592, at *6.

Both the Fifth and Ninth Circuits have held that at the motion to dismiss stage, a plaintiff advancing a disparate impact claim under the ADA need not present statistical evidence if he can show that a job qualification screens out the plaintiff on the basis of his disability. See Gonzales v. City of New Braunfels, 176 F.3d 834, 839 (5th Cir. 1999) (explaining that "[u]nder the ADA, if a plaintiff can prove that his employer has imposed eligibility requirements that tend to screen out the disabled, that employer will be deemed to have 'discriminated' unless it can demonstrate that the particular eligibility standard or criterion in question is 'job-related'"); see also Bryan v. Wal-Mart Stores, Inc., 669 F. App'x 908, 909 (9th Cir. 2016) ("To survive a motion to dismiss a disparate impact claim, [plaintiff] must allege a disability, the use of selection criteria, and factual allegations that allow the court to draw a reasonable inference that the selection criteria screens out or tends to screen out [plaintiff] on the basis of his disability.") In sum, it is sufficient at the pleadings stage to show that the policy or practice at issue had a greater

13

negative impact on people with a certain disability than it did on people without that disability.

Here, Mr. Phelps's allegations meet this standard, and he has sufficiently pleaded his claim to advance to discovery. Specifically, Mr. Phelps has alleged that individuals with disabilities are "statistically less likely to obtain a job with Lee County" because the County requires applicants to possess a driver's license, and many disabled individuals "cannot hold a driver's license because they suffer from disabilities which prohibit or limit their ability to drive." (Doc. 18 at 10–11, ¶ 58.) Because Mr. Phelps has sufficiently identified a facially neutral employment practice that allegedly has a disproportionate impact on job applicants who are vision impaired, he has plausibly pleaded a disparate impact claim. Detailed statistical information showing that the challenged practice resulted in discrimination is not required at this juncture.

### III. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss (Doc. 31.) is **DENIED**.

ORDERED in Fort Myers, Florida, on December 8, 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE